**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALFRED JOHNSON, | ) | CASE NO. 1-23-CV-02193 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | JUDGE JAMES S. GWIN |
| | ) | |
| CITY OF CLEVELAND, *et al.*, | ) | Magistrate Judge Jennifer Dowdell |
| | ) | Armstrong |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION**
**TO PLAINTIFF ALFRED JOHNSON'S TRO**

There is no emergency here. Plaintiff Alfred Johnson is a police officer for the City of Cleveland. Six weeks ago, Johnson was demoted from a commander to a sergeant and suspended for 30 days. The demotion was effective immediately and the suspension served. Yet Johnson seeks the extraordinary relief of a temporary restraining order to be reinstated and receive back pay. (Mot., ECF No. 1-3).

Because Johnson seeks to change the status quo, rather than preserve it, Defendants City of Cleveland, Dornat Drummond, Joellen O'Neill, and Jarod Schalacht, ask this Court to deny the TRO. Johnson should instead pursue relief through his grievance and EEOC charge.

I.    **BACKGROUND**

Six weeks ago, Johnson was removed as the commander of the Bureau of Special Services and demoted to sergeant, a move that has led to a grievance and a charge filed with the EEOC and OCRC, and finally this TRO.

1

**A.  Sgt. Alfred Johnson is promoted to commander.**

Cleveland is a municipal corporation organized under the laws of Ohio. It maintains a

Division of Police. The Division of Police has a chain of command. That chain of command

generally goes from, with ascending responsibility, patrol officer, sergeant, lieutenant, captain,

commander, deputy chief, to chief of police.

From 2012 to 2021, Johnson served as a member of the Gang Impact Unit ("GIU"). He

was first promoted to sergeant, and then commander in late 2021. (Compl., ¶ 17). As a sergeant

and then as the commander, Johnson had supervisory responsibility over the patrol officers of the

GIU.[1]

**B.  Johnson receives notice of discipline and then an evidentiary hearing on July 6
and July 7.**

After an anonymous complaint, Cleveland's Internal Affairs Unit started investigating the

GIU in late 2021 regarding conduct that occurred under Johnson.  The allegations included,

among other things, the excessive use of force and the regular failure by patrol officers to

properly use their Wearable Camera Systems (i.e., body cams). As the supervising officer,

Johnson had a responsibility to ensure that the patrol officers carried out their duties.

Because there was sufficient evidence to show that Johnson may have failed to supervise,

among other potential violations, he was issued pre-disciplinary letters. (Exhibit A, Pre-

Disciplinary Letters from June 2023). The letters explained the charges against him. (*Id.*). He and

his attorney also received a copy of the evidence.

On July 6 and July 7, Johnson was then afforded a hearing to respond to the charges. The

hearing was held on the record. (Exhibit B, July 6, 2023 Hearing Transcript; Exhibit C, July 7,

---

[1]     Johnson's responsibilities as the Commander of the Bureau of Special Services included
other units too, such as the Narcotics Unit and SWAT Unit.

2023, Hearing Transcript). Johnson was represented by counsel, Attorney Christopher McNeal. (*See* Exhibit B, p. 1). There was also a presentation of evidence and examination of witnesses. (*See id.*).

### C.  Johnson is suspended and demoted on September 23, 2023.

Most of the charges against Johnson were substantiated. (Exhibit D, Disposition Letter Dated September 22, 2023). Johnson was issued a "Thirty (30) workday suspension" and, effective immediately, the disposition letter notified Johnson, "[Y]our appointment as Commander is revoked and you shall return to your civil service rank of Sergeant." (*Id.*, p. 7). The next day, September 23, 2023, Johnson began serving his discipline. (Exhibit E, Divisional Notice 23-285).

### D.  Johnson files a grievance and charge of discrimination.

Johnson's employment is subject to a labor agreement. (Exhibit F, FOP Labor Agreement). Under the labor agreement, Johnson may appeal his suspension through the grievance process. (*Id.*). He did so by filing a grievance. (Exhibit G, Grievance No. 2023-03). A Step 3 hearing was recently held. The grievance resolution process remains unexhausted.

Johnson has challenged his suspension and demotion through other administrative procedures too. Johnson recently filed a charge of discrimination with Equal Employment Opportunity Commission and the Ohio Civil Rights Commission. (Charge, ECF No. 1-4). Johnson has not received a right-to-sue letter from either entity. (Compl., ¶ 38).

### E.  After serving his suspension, Johnson now brings this litigation.

Johnson has served his suspension and has been demoted. He has also initiated—but not exhausted—two administrative processes: the grievance process and the Charge process. He now seeks a temporary restraining order. (*See* Compl.). The proposed TRO would "restor[e] his former rank of Commander immediately" and provide back pay, among other relief. (*Id.*, ¶ 57).

Johnson brings multiple counts, including allegations of employment discrimination, defamation, and civil conspiracy, among other things.

Because Johnson seeks to alter the status quo and he is unlikely to succeed on the merits of his claims, Defendants oppose Johnson's requested TRO.

## II.    <u>STANDARD OF REVIEW</u>

A temporary restraining order is an "extraordinary remedy" granted "only where preventative or protective relief is required." *The Rightthing, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694, at *6 (N.D. Ohio Feb. 2, 2009) (citing *Sternberg v. Checker Oil Co*., 573 F.2d 921, 925 (6th Cir.1978)). The purpose of a TRO is to "maintain the status quo pending a final hearing regarding the parties' rights." *Seaman Corp. v. Flaherty*, No. 5:20-CV-443, 2020 WL 5223614, at *3 (N.D. Ohio Aug. 3, 2020) (citing *Burniac v. Wells Fargo Bank*, N.A., 810 F.3d 429, 435 (6th Cir. 2016)).

In determining whether to maintain the status quo, a plaintiff must show by clear and convincing evidence that he is entitled to relief balancing four factors:

> (1) likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) substantial harm to others from the proposed injunction; and (4) the broader public interest.

*Seaman Corp. v. Flaherty*, No. 5:20-CV-443, 2020 WL 5223614, at *3 (N.D. Ohio Aug. 3, 2020) (citation omitted).

Because Johnson seeks to alter the status quo, and is unlikely to succeed on the merits, this Court should deny the requested TRO. *Dean v. Ohio Dep't of Mental Health & Addiction Servs.*, No. 5:16-CV-1087, 2016 WL 2604220, at *2 (N.D. Ohio May 6, 2016) (Gwin, J.) (denying public employee's motion for TRO to halt disciplinary process).

4

III.   **ANALYSIS**

This Court should deny the TRO because Johnson seeks reinstatement and is unlikely to succeed on the merits.

A.  **Because Johnson was removed from his position six weeks ago, Johnson's TRO is an attempt to alter the status quo, so it should be denied.**

Johnson is a sergeant and seeks to become a commander through this Court, so the requested TRO should be denied. An injunction "cannot be used to redress a purely past injury." *Kentucky v. Yellen*, 54 F.4th 325, 339 (6th Cir. 2022). So a TRO or preliminary injunction that seeks to alter the status quo should be denied. *See, e.g.*, AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE v. UNITED STATES DEPARTMENT OF HOMELAND SECURITY, No. 23-12436, 2023 WL 7170658, at *2 (E.D. Mich. Sept. 27, 2023) ("This Court cannot prevent an action that has already occurred"); *Jarrett v. Greene*, No. 1:22-CV-456, 2022 WL 3354152, at *3 (S.D. Ohio Aug. 15, 2022) (denying TRO because it seeks to "change, rather than preserve, the status quo"), *report and recommendation adopted*, No. 1:22-CV-456, 2022 WL 4292833 (S.D. Ohio Sept. 16, 2022).

Here, this Court should deny the TRO because it would alter the status quo. Johnson received his suspension and demotion six weeks ago on September 22, 2023. (Exhibit D, September 22, 2023 Disposition letter). So Johnson is no longer a commander, and has already served his 30-day suspension. Johnson concedes as much. (Pl. Mot., ECF No. 1-3). There is no emergency here. And by seeking reappointment and back pay, he seeks to alter the status quo in his favor. This means the TRO should be denied.

**B.  Alternatively, because Johnson is unlikely to succeed on the merits, this Court should deny the TRO application.**

This Court should deny the TRO because it would reinstate Johnson to the position of commander six weeks after his removal. Alternatively, Johnson is unlikely to succeed on the merits, so this Court should deny the TRO.

**1.  Johnson failed to exhaust his employment claims.**

Because Johnson failed to administratively exhaust his employment claims, he is unlikely to succeed on the merits. Federal employment claims require administrative exhaustion with the EEOC. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010); 29 C.F.R. § 1601.12(b). Ohio employment claims require exhaustion with the OCRC. *See* R.C. 4112.052(B)(2)(b). A failure to exhaust requires dismissal of the claims. *See Younis*, 610 F.3d at 361.

Here, Johnson failed to exhaust his administrative remedies, so he is unlikely to succeed on the merits. Johnson appears to bring federal and state employment claims. (Charge, ECF No. 1-4). This is shown by the dual-filed charge and the Complaint. (Compl., ¶¶ 42–48). But he has not received a right-to-sue letter. He concedes as much. (Compl., ¶ 32). Therefore, he failed to exhaust his administrative remedies and this Court should deny the TRO.

**2.  Johnson's remaining claims, if any, are preempted by the labor agreement.**

Because Johnson's other claims relate to the discipline process, these claims are preempted by the labor agreement, so this Court should deny the TRO. Johnson is a public employee. The terms of his employment are governed by R.C. Chapter 4117 and the labor agreement negotiated by the FOP and the City. *Chenevey v. Greater Cleveland Reg'l Transit Auth.*, 2013-Ohio-1902, 992 N.E.2d 461, ¶14-18 (8th Dist.) ("Chapter 4117 of the Ohio Revised Code governs disputes between an employer and an employee where a CBA is in place.").

The "dispositive test" in determining whether a court has jurisdiction over a claim by a party to a CBA is whether the party's claims "arise from or depend on the collective bargaining rights" outlined by Chapter 4117. *State ex rel. Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010 Ohio 5039, 937 N.E.2d 88, ¶20, quoting *Franklin Cty. Law Enforcement Assn.* at paragraph 2 of the syllabus; *Gudin v. W. Reserve Psychiatric Hosp.*, 10th Dist. No. 00AP-912, 2001 Ohio App. LEXIS 2634 (June 14, 2001) (finding state-law claims are preempted where the state-law claim is based on rights created by the CBAs or the rights are created by state law, but the application of the law is dependent on an interpretation of a CBA).

Here, Johnson brings a string of claims arising from the labor agreement so this Court should deny the TRO. The labor agreement addresses the investigation of disciplinary conduct. (Exhibit F, Article 4, p. 7). The labor agreement addresses the hearing and discipline. (*Id.*, Article 11, p. 18). And then the labor agreement provides a post-discipline appeal. (*Id.*, Article 20, p. 30). Johnson now alleges that this process was flawed, including that investigation was unfair (Compl., ¶ 35) (Count One), the hearing was unfair (*id.*, ¶ 40) (Count Two), bad things were said about him at the hearing (*id.*, ¶ 48) (Count Four), and that it caused him harm (*id.*, ¶ 54) (Count Five). Yet these allegations arise from the labor agreement. So what Johnson is really complaining about is how the labor agreement was carried out by the City. This conclusion is confirmed by his grievance. (Exhibit G, Grievance No. 2023-03).

Because the Johnson's claims depend or arise from the labor agreement, this Court should deny the TRO.

### 3. Johnson cannot bring a breach of contract claim to enforce the labor agreement.

Johnson cannot bring a breach of contract claim to enforce the labor agreement, so this Court should deny the TRO. Under Ohio law, a public employee cannot bring a breach of

contract claim against a public employer to enforce a labor agreement. *See, e.g.*, *Bailey v. Beasley*, 10th Dist. Franklin No. 09AP-682, 2010-Ohio-1146, ¶ 16 (public employee could not "sidestep final and binding arbitration required by a collective bargaining agreement"); *United Electrical, Radio & Machine Workers of America v. Delaware City School Dist. Bd. of Educ.*, 5th Dist. Delaware No. 00CAH004010, 2001 WL 1773882, *3 (employee is not a party to a labor agreement and therefore cannot bring a cause of action); *Mun. Constr. Equip. Operators' Lab. Council v. Cleveland*, 2016-Ohio-5934, ¶ 19, 71 N.E.3d 655, 660 (union could not bring breach of contract claim).

Here, Johnson cannot bring a breach of contract claim, so this Court should deny the TRO. Johnson alleges that the City's investigation and discipline violated the labor agreement. (Compl., ¶ 38) (Count Two). But Johnson is not a party to the labor agreement. (*See* Exhibit F, CBA). The labor agreement is instead between the City and the FOP. As a result, Johnson cannot bring a breach of contract claim.

Because the FOP, not Johnson, is a party to the labor agreement, this Court should deny the TRO.

### 4.  Johnson is unlikely to succeed on his IIED claim

Because Johnson's Intentional Infliction of Emotional Distress claim is just a repackaged employment claim, this Court should deny the TRO. To establish an IIED claim under Ohio law, Plaintiffs must show, in part, that Defendants' conduct was "extreme and outrageous." *Culler v. Exal Corp.*, 193 F. Supp. 3d 850, 851-52 (N.D. Ohio Jun. 15, 2016) (granting motion to dismiss IIED claim); *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 453 N.E.2d 666 (1983).  "Ohio places a particularly high bar on 'extreme and outrageous' conduct in the employer-employee relationship." *Culler,* 193 F. Supp. 3d at 852.

As the Sixth Circuit has explained, "an employee's termination, even if based upon

discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111 (6th Cir. 2008) (*quoting Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)); *see also McIntosh v. Greater Cleveland Reg'l Transit Auth.*, No. 1:16CV1680, 2016 U.S. Dist. LEXIS 141250, * 10 (N.D. Ohio 2016) (granting motion to dismiss IIED claim and collecting cases).  If "workplace discrimination and retaliation could also support an IIED claim, every Title VII case would also be a state-law tort case. That is not correct, however, given that IIED claims must involve conduct that is worse than criminal." *Holland v. Health*, No. 3:18CV490, 2018 U.S. Dist. LEXIS 196939, *33 (N.D. Ohio Nov. 19, 2018).

Here, Johnson cannot convert his employment claim into an IIED claim, so this Court should deny the TRO. Johnson alleges that his discipline was unfair. He frames this various ways, including as a civil conspiracy, breach of contract, and unlawful discrimination. (Compl.). But these allegations are contrary to what happened, including a thorough investigation (Exhibit A, Pre-Disciplinary Letters), evidentiary hearing (Exhibits B, C, Transcripts), and now an appeal. (Exhibit G, Grievance No. 2023-03). There is nothing extreme and outrageous here by Defendants.

Because Johnson cannot convert his employment grievances into an IIED claim, this Court should deny the TRO.

### 5.  Johnson is unlikely to succeed on his defamation claim.

Because any statements were true, and part of an employment proceeding, this Court should deny the TRO. A defamation claim requires five elements. *Garofolo v. Fairview Park*, 8th Dist. Cuyahoga No. 92283, 2009-Ohio-6456, ¶ 17.[2] One element is that the statement must

---

[2]        The claims in *Garfolo* roughly parallel all the same state-law claims here.

be false. *Id.* But statements made during an employment proceeding are afforded an absolute privilege to defamation claims. *Id.*, ¶ 21 ("[B]ecause the statements were made at a union grievance meeting, they were privileged communications."); *Gintert v. WCI Steel, Inc.*, 11th Dist. Trumbull No. 2002-T-0124, 2007-Ohio-6737, ¶ 21 ("Under the doctrine of qualified privilege, statements made in good faith on a matter of common interest between an employer and an employee, or between two employees, concerning a third employee are protected in an action for defamation.").

Here, Johnson cannot show the elements of defamation claim, and any statements were made during an internal affairs investigation and disciplinary hearing, so this Court should deny the TRO. First, given Cleveland's thorough investigation, Johnson cannot show that Defendants made false statements. Second, any statements were part of Cleveland's investigation. (*See, e.g.*, Exhibit A, Pre-Disciplinary Letters). This affords Defendants absolute immunity from false statements.

Because Defendants made true statements, and did so during a quasi-judicial process, this Court should deny the TRO.

### 6. Johnson's remaining claims also fail.

Johnson's remaining claims also fail. Johnson could be arguing that the pre-disciplinary process was unfair in violation of the U.S. Constitution and 42 U.S.C. § 1983. (Compl., ¶¶ 38–42). But Cleveland's pre-disciplinary process is constitutional so long as there is notice of the charges, the factual basis for the allegations, the opportunity to respond, and then a post-discipline appeal process. *See Cromer v. City of Cleveland*, No. 20-CV-2080, 2021 WL 293046, at *4 (N.D. Ohio Jan. 28, 2021) (finding Cleveland's pre-disciplinary process satisfied Due Process).

Here, Johnson received the required Due Process and then some. He received a detailed notice of the charges. (Exhibit A, Pre-Disciplinary letters). Then he received a multi-day hearing on the record, with counsel. (Exhibits B, C, Hearing Transcripts). And finally, he is now exercising his appeal for a post-discipline review. (Exhibit G, Grievance No. 2023-03). Johnson has received well beyond what is required by law.

Because any other claims brought by Johnson also fail, this Court should deny the TRO.

### C.  Alternatively, because the remaining TRO factors favor denial, this Court should deny the TRO.

Johnson has already left the commander position, and his reinstatement would hurt the City and the Public, so the remaining factors favor denying the TRO.

#### 1.  There is no irreparable harm to Johnson if the TRO is denied.

There is no irreparable harm to Johnson, so this Court should deny the TRO. Johnson is no longer a commander and has already served the 30-day suspension. The harm to Johnson, if any, has already been suffered, and could be paid for in monetary damages. Therefore, there cannot be irreparable harm if the TRO denied. So this Court should deny the TRO.

#### 2.  The City of Cleveland would be harmed by the TRO.

Because the City of Cleveland would be harmed by reinstating Johnson as a commander, this Court should deny the TRO. Reinstating Johnson would cause organizational chaos. The Commander of the Bureau of Special Services has significant responsibilities over around 50 officers. This includes supervising officers in the Gang Impact Unit, Narcotics Unit/ Heroin Involved Death Investigation, SWAT Unit and Task Forces, including the Crime Gun Intelligence Center and Homeland Security Investigation. This is important work, and a clear chain of command allows officers facing life-and-death challenges to respond properly. Should this Court remove the current Acting Commander and replace him with Johnson to provide

11

oversight for an indefinite period, these life-and-death decisions would become more difficult, harming Cleveland.

Because reinstating Johnson would harm Cleveland, this Court should deny the TRO.

### 3.  The public would be harmed by the TRO.

The public would be harmed by reinstating Johnson, so this Court should deny the TRO. The Division of Police is a paramilitary organization. Like all paramilitary organizations, a clear chain of command is required. Disrupting the chain of command, as would be the case should this Court reinstate Johnson as a commander, risks decreasing the level of service provided to the public. This is particularly true given the substantiated allegations against Johnson, including a failure to monitor excessive force and a failure to follow the body cam policy. Therefore, the TRO should be denied.

### D.  The TRO is procedurally defective so it should be denied.

The TRO should be denied as procedurally defective for two reasons. First, Johnson failed to provide evidence to support the motion. *Gray Data, Inc. v. Davian*, No. 1:23-CV-1470, 2023 WL 5352048, at *5 (N.D. Ohio Aug. 21, 2023). Second, Johnson failed to provide a bond or seek waiver. *See* Fed. R. Civ. P. 65(c).

Because the TRO is procedurally defective, this Court should deny the TRO.

### IV.  <u>CONCLUSION</u>

For all these reasons, this Court should deny the TRO.

Respectfully submitted,

MARK GRIFFIN (00641410)
Director of Law

By:  s/Matthew R. Aumann
TIFFANY C. FISCHBACH (0083348)
Chief Assistant Director of Law
MATTHEW R. AUMANN (0093612)
Assistant Directors of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 441144
Tel:     (216) 664-2683
          (216) 664-2675
Fax:     (216) 664-2663
TFischbach@clevelandohio.gov
MAumann@clevelandohio.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify the above was filed electronically this 13th of November, 2023.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  Additionally, I served on November 13, 2023, Plaintiff's counsel by email at the following address:  chris@mcneallegalservices.com.

s/ Matthew R. Aumann
MATTHEW AUMANN (0093612)
Assistant Director of Law

*One of the Attorneys for Defendants*

13