# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ALFRED JOHNSON, | ) CASE NO. 1:23-CV-02193 |
| Plaintiff, | ) |
| v. | ) JUDGE JAMES S. GWIN |
| CITY OF CLEVELAND, *et al.*, | ) |
| Defendants. | ) Magistrate Judge Jennifer Dowdell Armstrong |

## DEFENDANTS' MEMORANDUM IN SUPPORT

Plaintiff Alfred Johnson is a police officer for the City of Cleveland who was suspended and demoted. He brings a race discrimination claim under Title VII. But he failed to exhaust his administrative remedies. This dooms his claim. Johnson also failed to allege his discipline was because of his race. So either way, this Court should grant judgment to Defendants on his federal claims. This Court should then exercise supplemental jurisdiction over the state-law claims and grant judgment for Defendants.

## I. BACKGROUND

Johnson, for reasons unrelated to his race, was removed as the commander of the Bureau of Special Services, demoted to sergeant, and served a 30-day suspension.

### A. Sgt. Alfred Johnson is promoted to commander.

Cleveland is a municipal corporation organized under the laws of Ohio. (Compl., ¶ 2, ECF No. 1-2). It maintains a Division of Police. The Division of Police has a chain of command.

1

That chain of command follows this order, with ascending responsibility: patrol officer, sergeant, lieutenant, captain, commander, deputy chief, and chief of police.

From 2012 to 2021, Johnson served as a member of the Gang Impact Unit ("GIU"). (*Id.*, ¶ 6). He was first promoted to sergeant, and then commander in late 2021. (Compl., ¶ 17). As a sergeant and then as the commander, Johnson had supervisory responsibility over the patrol officers of the GIU.

Johnson claims that his promotion to commander ruffled feathers. (*See id.*). Some, according to Johnson, wanted a different "white" or "black" officer instead. (*Id.*, ¶ 18). And Defendant Schlact allegedly wanted to undermine Johnson so he continued an otherwise dormant investigation by the Internal Affairs Unit. (*Id.*, ¶¶ 19, 23).

### B. Johnson receives notice of discipline and then an evidentiary hearing on July 6 and July 7.

During the IA Unit's investigation, Johnson had to be placed on "ICE." (*Id.*, ¶ 24). Johnson's conduct was presented to prosecutorial authorities. (*See id.*, ¶ 26). No criminal charges were brought. (*See id.*). Still, the IA Unit looked through six months of video and hundreds of interactions with the public. (*Id.*, ¶ 28). Johnson alleges that infractions were found, but calls them "minor" infractions. (*Id.*).

John was then charged administratively with 23 specifications for violating Division of Police policies and procedures. (*Id.*, ¶ 31). A two-day hearing was held. (*Id.*). Johnson was found guilty of only some specifications. (*Id.*; *see also* September 22, 2023 Disposition Letter, ECF No. 6-1).

### C. Johnson is suspended and demoted.

Most of the charges against Johnson were substantiated. (*See id*). Johnson received a "Thirty (30) workday suspension" and, effective immediately, the disposition letter notified

Johnson, "[Y]our appointment as Commander is revoked and you shall return to your civil service rank of Sergeant." (*Id.*, p. 7). The Johnson then began serving his discipline.

### D. Johnson files a charge of discrimination and a grievance.

Not long after his demotion, Johnson filed a charge with the EEOC. (Compl., ¶ 32, ECF No. 1-2). The Charge was filed on October 30, 2023. (Charge, ECF No. 6-3). In it, provides a narrative of events and fills out "race" as the illegal discrimination. (*Id.*, PageID # 521). Johnson has not received a right-to-sue letter. (*See* Compl., ECF No. 1-2).

Johnson also filed a grievance. (Compl., ¶ 32; Grievance No. 2023-03, ECF No. 6-2). That is because Johnson's employment is controlled by a labor agreement. (Labor Agreement, ECF No. 6-4). The grievance has not proceeded to arbitration.

### E. Johnson now brings this litigation.

Johnson first filed the Complaint in state court along with a motion for a temporary restraining order. (Compl., ECF No. 1-2). Defendants removed this action to federal court. (ECF No. 1). Defendants opposed the TRO. (Opp., ECF No. 3). This Court denied the requested TRO. (Order, ECF No. 4). Defendants then answered. (Answer, ECF No. 6). Defendants now move for judgment on the pleadings.

## II. STANDARD OF REVIEW

The same standard of review for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *Kenyon v. Union Home Mortg. Corp.*, 581 F. Supp. 3d 951, 955 (N.D. Ohio 2022) (Calabrese, J.) (citing *Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016)). A court evaluating this type of motion "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d

470, 480 (6th Cir. 2020) (citation omitted). Well-pleaded factual allegations must plausibly give rise to an entitlement to relief; "pleaded facts will not do so if they are merely consistent with a defendant's liability." *Bates*, 958 F.3d at 480 (citations and quotation marks omitted).

Because Johnson failed to plausibly state a claim for relief, this Court should grant judgment to Defendants.

### III. ANALYSIS

Because Johnson failed to exhaust his administrative remedies, among other reasons, this Court should grant judgment to Defendants on Johnson's federal and state-law claims.

**A. Because Johnson failed to exhaust his employment claims, this Court should grant judgment to the city of Cleveland.**

Johnson failed to receive a right-to-sue letter before suing, so this Court should grant judgment to Defendants. Federal employment claims require administrative exhaustion. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010); 29 C.F.R. § 1601.12(b). A plaintiff "must obtain a right-to-sue letter from the EEOC to properly exhaust the administrative remedy." *Rogers v. Horwitz*, No. 1:20-CV-02568, 2023 WL 6383796, at *13 (N.D. Ohio Sept. 29, 2023). A court properly grants a Rule 12 motion when a plaintiff fails to receive and attach a right-to-sue letter. *See, e.g.*, *Jones v. City of Cincinnati*, No. 1:22-CV-530, 2023 WL 3005698, at *3 (S.D. Ohio Apr. 19, 2023) (dismissing complaint for failing to allege receipt of a right-to-sue letter and collecting cases holding same).

Here, the Parties agree that Johnson filed a charge with the EEOC. (*See* Charge, ECF No. 6-3). But Johnson failed to receive a right-to-sue letter. (*See* Compl., ECF No. 1-2). Therefore, he failed to properly exhaust his administrative remedies. This dooms his claim. This Court should thus grant judgment to Cleveland on Johnson's Title VII claim.

4

### B. Alternatively, Johnson failed to plead race discrimination, so this Court should grant judgment to the city of Cleveland.

This Court need not consider the merits of Johnson's employment claim because he failed to exhaust his administrative remedies. But even if this Court reaches the merits, Johnson alleges that factors other than his race caused his discipline, so this Court should grant judgment to Defendants.

Title VII requires an employee to allege that an employer discriminated against him based on race. *See* 42 U.S.C. § 2000e-16(a). This requires an "adequate factual basis" to draw an inference of race discrimination. *Farrell v. Laborers' Int'l Union-Local 860*, No. 1:23-CV-01559-PAB, 2023 WL 8622247, at *3 (N.D. Ohio Dec. 13, 2023) (citation omitted). Allegations of personal animus, such as jealously, cannot support an inference of race discrimination. *See, e.g.*, *Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 617 (6th Cir. 2012) (unfair treatment due to "jealousy" was not actionable); *Blasdel v. Nw. Univ.*, 687 F.3d 813, 817 (7th Cir. 2012) ("[O]ffice politics and professional jealousy are bad reasons for denying tenure, an erroneous denial of tenure, as such, does not violate Title VII.").

Here, Johnson failed to adequately plead race discrimination, so this Court should grant judgment to Defendants. Initially, the Complaint fails to allege Johnson's race so his claim stumbles out of the gate.[1] But assuming Johnson is Black as referenced in the Charge, his claim still fails. That is because no allegations point to Johnson's race as a cause for his discipline. Johnson concedes some would have preferred Johnson's promotion go to a "white police officer . . . or to black police officer" instead. (Compl., ¶ 18, ECF No. 1-2). But if the promotion could have gone to either a white office or a Black officer, then the issue was not Johnson's race. Johnson instead alleges, if anything, that others were jealous of his quick rise from sergeant to

---

[1] *Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *5 (6th Cir. Jan. 26, 2022) (trial court properly dismissed claim when plaintiff failed to allege membership in a protected class).

5

commander, skipping the intermediate positions of lieutenant and captain. (*See id.*, ¶¶ 19–23). Johnson's race was therefore a non-factor. As a result, his race discrimination claim fails.

There are other problems with Johnson's allegations as it relates to his Title VII claim. Johnson seems to suggest that the investigation was started for an unfair reason. (*See id.*, ¶¶ 19–23). But there are no allegations about what Director Howard, the terminating official, knew, and there are no allegations about Johnson's two-day evidentiary hearing. (*Id.*, ¶ 31). These hearings gave the decisionmakers a full opportunity to consider the alleged misconduct and issue discipline. (*See* September 22, 2023 Disposition Letter, ECF No. 6-1; Hearing Transcripts, ECF Nos. 3-2, 3-3). Johnson also concedes that he violated the Division's polices. (Compl., ¶ 28). Thus, Johnson fails to allege the investigation, even if improperly started as matter of racial animus (and the alleged facts say otherwise), caused his discipline.[2]

Because Johnson alleges that race was a non-factor in his investigation and discipline, this Court should grant judgment to Cleveland on Johnson's Title VII claim.

### C. This Court should exercise supplemental jurisdiction and grant judgment to Defendants on the state-law claims too.

Because it would be the most efficient resolution of this litigation, this Court, after granting judgment to Cleveland on the federal claims, should then exercise supplemental jurisdiction over the state-law claims and grant judgment to Defendants.

#### 1. Johnson failed to exhaust his state-law employment claims.

Because Johnson failed to receive a right-to-sue letter, Johnson also failed to exhaust his state-law race discrimination claim. Ohio employment claims require administrative exhaustion. *See* R.C. 4112.052(B)(2)(b). This too means a right-to-sue letter. *Id.* at (B)(1)(b)(i). Johnson

---

[2] *Woods v. City of Berwyn*, 803 F.3d 865, 870 (7th Cir. 2015) (evidentiary hearing for public employee broke causal chain under the cat's paw theory of liability).

6

failed to receive a right-to-sue letter for his state-law claims, so this Court should grant judgment to Defendants.

### 2. Johnson's remaining claims, if any, are preempted by the labor agreement.

Because Johnson's other claims relate to the discipline process, these claims are preempted by the labor agreement, so this Court lacks jurisdiction and should grant judgment to Defendants. The terms of employment for a unionized employee are governed by R.C. Chapter 4117 and the negotiated labor agreement. *Chenevey v. Greater Cleveland Reg'l Transit Auth.*, 2013-Ohio-1902, 992 N.E.2d 461, ¶14-18 (8th Dist.). "[B]inding arbitration is the exclusive remedy for violations of employees' employment rights arising from the collective bargaining agreement." *Smith v. Bd. of Trustees Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 896 (N.D. Ohio 2010) (citations omitted). The "dispositive test" in determining whether a court has jurisdiction over a claim by a party to a CBA is whether the party's claims "arise from or depend on the collective bargaining rights" outlined by Chapter 4117. *State ex rel. Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010 Ohio 5039, 937 N.E.2d 88, ¶20 (citation omitted).

Here, Johnson brings a string of claims arising from the labor agreement so this Court lacks jurisdiction and should grant judgment to Defendants. The labor agreement provides that arbitration is the "exclusive method" for reviewing disputes between Cleveland and any member, like Johnson. (CBA, Art. 20, Sec. 5, ECF No. 6-4, PageID # 561). The labor agreement addresses the investigation of alleged misconduct. (*Id.*, Article 4, ECF No. 6-4, PageID # 535). The labor agreement addresses the hearing and any discipline issued. (*Id.*, Article 11, PageID # 545). And then the labor agreement provides a post-discipline appeal. (*Id.*, Article 20, PageID # 558). Johnson now alleges that this process was flawed, including that investigation was unfair (Compl., ¶ 35) (Count One), the hearing was unfair (*id.*, ¶ 40) (Count Two), bad things were said

7

about him at the hearing (*id.*, ¶ 48) (Count Four), and that it caused him harm (*id.*, ¶ 54) (Count Five). Yet these allegations arise from the labor agreement. So what Johnson is really complaining about is how the labor agreement was carried out by the City. This conclusion is confirmed by his grievance. (Grievance, ECF No. 6-2, PageID # 507). The Grievance, for example, alleges that the investigation and resulting discipline were unfair.

Because Johnson's claims depend or arise from the labor agreement, this Court lacks jurisdiction to consider Johnson's remaining claims, including Counts One, Two, Four, and Five.

### 3. Alternatively, Johnson cannot bring a breach of contract claim to enforce the labor agreement.

Johnson cannot bring a breach of contract claim to enforce the labor agreement, so this Court should grant judgment to Defendants. Under Ohio law, a public employee cannot bring a breach of contract claim against a public employer to enforce a labor agreement. *See, e.g.*, *Bailey v. Beasley*, 10th Dist. Franklin No. 09AP-682, 2010-Ohio-1146, ¶ 16 (public employee could not "sidestep final and binding arbitration required by a collective bargaining agreement"); *United Electrical, Radio & Machine Workers of America v. Delaware City School Dist. Bd. of Educ.*, 5th Dist. Delaware No. 00CAH004010, 2001 WL 1773882, *3 (employee is not a party to a labor agreement and therefore cannot bring a cause of action); *Mun. Constr. Equip. Operators' Lab. Council v. Cleveland*, 2016-Ohio-5934, ¶ 19, 71 N.E.3d 655, 660 (union could not bring breach of contract claim).

Here, Johnson cannot bring a breach of contract claim, so this Court should grant judgment to Defendants. Johnson alleges that the City's investigation and discipline violated the labor agreement. (Compl., ¶ 38) (Count Two). But Johnson is not a party to the labor agreement. (*See* labor agreement, ECF No. 6-4, PageID # 525, 580) (showing parties to the agreement on the

8

title page and signature page). The labor agreement is instead between the City and the FOP. As a result, Johnson cannot bring a breach of contract claim.

Because the FOP, not Johnson, is a party to the labor agreement, this Court should grant judgment to Defendants.

### 4. Alternatively, Johnson cannot bring an IIED claim.

Because Johnson's Intentional Infliction of Emotional Distress claim is just a repackaged employment claim, this Court should grant judgment to Defendants. To establish an IIED claim under Ohio law, a plaintiff must show, in part, that a defendant's conduct was "extreme and outrageous." *Culler v. Exal Corp*., 193 F. Supp. 3d 850, 851-52 (N.D. Ohio Jun. 15, 2016) (granting motion to dismiss IIED claim); *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 453 N.E.2d 666 (1983). "Ohio places a particularly high bar on 'extreme and outrageous' conduct in the employer-employee relationship." *Culler*, 193 F. Supp. 3d at 852.

As the Sixth Circuit has explained, "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111 (6th Cir. 2008) (*quoting Godfredson v. Hess & Clark, Inc*., 173 F.3d 365, 376 (6th Cir. 1999)); *see also McIntosh v. Greater Cleveland Reg'l Transit Auth*., No. 1:16CV1680, 2016 U.S. Dist. LEXIS 141250, * 10 (N.D. Ohio 2016) (granting motion to dismiss IIED claim and collecting cases). If "workplace discrimination and retaliation could also support an IIED claim, every Title VII case would also be a state-law tort case. That is not correct, however, given that IIED claims must involve conduct that is worse than criminal." *Holland v. Health*, No. 3:18CV490, 2018 U.S. Dist. LEXIS 196939, *33 (N.D. Ohio Nov. 19, 2018).

Here, Johnson cannot convert his employment claim into an IIED claim, so this Court should grant judgment to Defendants Johnson alleges that his discipline was unfair. (Compl.,

9

ECF No. 1-2). He frames this various ways, including as a civil conspiracy, breach of contract, and unlawful discrimination. (Compl.). But these allegations fail to raise to extreme or outrageous behavior.

Because Johnson cannot convert his employment grievances into an IIED claim, this Court should grant judgment to Defendants.

### 5. Alternatively, Defendants are immune from Johnson's defamation claim.

Because any statements were true, and part of an employment proceeding, this Court should grant judgment to Defendants. A defamation claim requires five elements. *Garofolo v. Fairview Park*, 8th Dist. Cuyahoga No. 92283, 2009-Ohio-6456, ¶ 17.[3] One element is that the statement must be false. *Id.* But statements made during an employment proceeding are afforded an absolute privilege to defamation claims. *Id.*, ¶ 21 ("[B]ecause the statements were made at a union grievance meeting, they were privileged communications."); *Gintert v. WCI Steel, Inc.*, 11th Dist. Trumbull No. 2002-T-0124, 2007-Ohio-6737, ¶ 21 ("Under the doctrine of qualified privilege, statements made in good faith on a matter of common interest between an employer and an employee, or between two employees, concerning a third employee are protected in an action for defamation.").

Here, Johnson cannot show the elements of defamation claim, and any statements were made during an internal affairs investigation and disciplinary hearing, so this Court should grant judgment to Defendants. First, Johnson fails specific false statements made by specific Defendants, so this claim fails the *Twombly* pleading standard. (Compl., ¶ 47, ECF No 1-2). Second, any statements that Johnson could point to fall within the disciplinary process, including

---

[3] The claims in *Garfolo* roughly parallel all the same state-law claims here.

Cleveland's investigation. (*See* September 22, 2023 disposition letter, ECF No. 6-1). This affords Defendants absolute immunity from false statements.

Because Defendants made true statements, and did so during a quasi-judicial process, this Court should grant judgment to Defendants.

## IV.     CONCLUSION

For all these reasons, this Court should grant judgment to Defendants.

        Respectfully submitted,

        MARK GRIFFIN (0064141)
        Director of Law

By:  *s/Matthew R. Aumann*
      TIFFANY C. FISCHBACH (0083348)
      Chief Assistant Director of Law
      MATTHEW R. AUMANN (0093612)
      Assistant Directors of Law
      City of Cleveland, Department of Law
      601 Lakeside Avenue, Room 106
      Cleveland, Ohio 441144
      Tel:   (216) 664-2683
             (216) 664-2675
      Fax:  (216) 664-2663
      TFischbach@clevelandohio.gov
      MAumann@clevelandohio.gov

      *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify the above was filed electronically this 18th day of January, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Matthew R. Aumann*
MATTHEW AUMANN (0093612)
Assistant Director of Law

*One of the Attorneys for Defendants*
